**Carl Post, OSB No. 061058**
carlpost@lawofficeofdanielsnyder.com
**John Burgess, OSB No. 106498**
johnburgess@lawofficeofdanielsnyder.com
**LAW OFFICES OF DANIEL SNYDER**
1000 SW Broadway, Suite 2400
Portland, Oregon 97205
Tel: (503) 241-3617
Fax: (503) 241-2249
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### PENDLETON DIVISION

| | |
|---|---|
| **STEVEN ROSE**, as personal representative of the Estate of Richard Rose, | Case No. 2:22-cv-923-IM |
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| v. | 42 U.S.C. § 1983, Wrongful Death, and Negligence |
| **STATE OF OREGON**, by and through the Oregon Department of Corrections, an agency of the State of Oregon; **DUSTIN HERRON**; **ALEJANDRO PINA**; **HEATHER CHRISTIAN; CHRISTINA IRVING; STEPHEN TROTT; KIERON CARLSON; HAILEY COLEMAN; CHRISTINA CAMPOS-HERNANDEZ;** and **SHUREE JEMMETT**, | |
| Defendants. | |

///
///

PAGE 1 – FIRST AMENDED COMPLAINT

## INTRODUCTION

1.      This is an action arising from Richard Rose's wrongful and avoidable death and the Defendants' negligence and deliberate indifference to his medical condition. Defendants willfully disregarded Mr. Rose's[1] serious medical condition and failed to render appropriate first aid and medical care. Defendants delayed calling 911 until long after it was clear Mr. Rose needed emergency medical care and to be transported to the hospital. Mr. Rose lost valuable time that would have saved his life. As a result, Mr. Rose died while in the custody of the Oregon Department of Corrections (ODOC). Plaintiff brings a claim under §1983 as well as a wrongful death action.

## JURISDICTION AND VENUE

2.      This action is brought pursuant to 42 U.S.C. § 1983, the 8th and 14th Amendments to the United States Constitution, and supplemental state law negligence claims.

3.      This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, supplemental jurisdiction of the state law negligence claims pursuant to 28 USC § 1367.

4.      Venue is in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because the claim arose in this Judicial District. The acts pertaining to the deceased occurred in Umatilla County, Oregon. Mr. Rose died in the Kennewick, Washington. The main policy and operational decisions made by ODOC occurred in Marion County, Oregon.

## PARTIES

5.      Plaintiff Steven Rose is the duly appointed personal representative of the Estate of Richard Rose. Steven Rose is Mr. Rose's father. He resides in Bend, Oregon. At all times relevant, Richard Rose was an inmate at Two Rivers Correctional Institution (TRCI).

---

[1] Mr. Rose refers to Richard Rose, not Plaintiff Steven Rose, throughout this complaint.

PAGE 2 – FIRST AMENDED COMPLAINT

6. Defendant State of Oregon operates ODOC as an agency of the State of Oregon. Defendant State of Oregon is liable for the actions or inactions of its employees and agents and of ODOC and its employees and agents.

7. Defendant Dustin Herron was at all relevant times a lieutenant at TRCI. At all relevant times, Defendant Herron acted under color of law.

8. Defendant Alejandro Pina was at all relevant times a correctional officer at TRCI. At all relevant times, he acted under color of law.

9. Defendant Heather Christian was at all relevant times a correctional officer at TRCI. At all relevant times, she acted under color of law.

10. Defendant Christina Irving was at all relevant times a correctional sergeant at TRCI. At all relevant times, she acted under color of law.

11. Defendant Stephen Trott was at all relevant times a correctional sergeant at TRCI. At all relevant times, he acted under color of law.

12. Defendant Kieron Carlson was at all relevant times a correctional corporal at TRCI. At all relevant times, he acted under color of law.

13. Defendant Hailey Coleman was at all relevant times a nurse at TRCI. At all relevant times, she acted under color of law.

14. Defendant Christina Campos-Hernandez was at all relevant times a nurse at TRCI. At all relevant times, she acted under color of law.

15. Defendant Shuree Jemmett was at all relevant times a nurse at TRCI. At all relevant times, she acted under color of law.

## FACTUAL ALLEGATIONS

16. In August 2020, Mr. Rose was 24 years old and incarcerated at TRCI.

PAGE 3 – FIRST AMENDED COMPLAINT

17. On the evening of August 20, 2020, Mr. Rose was in his cell along with his cellmate. Mr. Rose had exercised earlier in the day. After his evening meal, he and his cellmate went to their cell to watch television.

18. At approximately 9:00 pm, Mr. Rose began vomiting and making a strange sound. He could not breath and collapsed to the ground. His cell mate immediately began pressing the emergency button located in his cell to get the attention of the guard on the unit, Defendant Pina. Mr. Rose's cellmate pressed the button over and over and did not get a response. His cellmate began yelling to the other inmates on the unit that Mr. Rose was not breathing and "man down." "Man down" is a phrase used in prison to indicate that an inmate confined to his cell needs urgent medical attention. This phrase is used officially by TRCI staff and known to inmates. When the guard did not respond, the other inmates on the unit started yelling, "Man down!" Mr. Rose's cellmate yelled, "He's dying! He can't breathe!" Numerous inmates in the unit were banging on their cell doors and yelling for the corrections staff to respond to Mr. Rose's cell. After approximately 5 minutes, one of the inmates on the unit said to Pina, who was located in the unit officer station, "Do something man, that mutha fucka's dying and you're just sitting there!" Pina opened the door to the unit officer station and said, "You shut up. He's not dying. You think I don't know how to do my job?" Defendant Pina did nothing to assist Mr. Rose. Defendant Christian then went up to the second tier of the unit where Mr. Rose's cell was located, and Defendant Pina opened the door remotely. Christian then used her radio to request "back up" and stated on the radio, "Sergeant? There's an AIC [adult in custody] on the floor. I don't know if he's faking. It looks like he's not moving." There was an inaudible question on the radio, to which she responded, "Eh, I don't know if we need to send medical yet. Maybe send the L.T. [lieutenant] First."

PAGE 4 – FIRST AMENDED COMPLAINT

19. After approximately five more minutes had passed, several corrections officers and Defendant Herron arrived on the unit. The inmates on the tier continued to yell at the officers, "Help him, he can't breathe!" Defendant Herron told the inmates, "He's fine. Stop yelling out of your doors or you'll go to the hole." At this point Defendant Irving arrived on scene with defendants Trott and Carlson. The officers stood around and did not make any effort to render first aid to Mr. Rose, even though he was obviously in extreme distress.

20. Sergeant Trott and Corporal Carlson pulled Mr. Rose out onto the tier and flipped him onto his back. Mr. Rose was not moving, and his body was completely limp. His face was turning from extremely pale to a flushed, purple-pink color. His chest was not rising.

21. Defendants Coleman and Campos-Hernandez arrived at the cell. Defendants Coleman and Campos-Hernandez did not bring emergency response equipment and did not check Mr. Rose's pulse or heartbeat. Defendants Coleman and Campos-Hernandez did not place their fingers on Mr. Rose's neck or wrists to check his vital signs. An inmate on the unit yelled to the nurses, "Check his vitals at least; do your fucking job! Check his breathing - *something!* Don't just let him die!"

22. Mr. Rose still had not moved, and his body was becoming further discolored. Two corrections officers put handcuffs on Mr. Rose's cell mate. Approximately five to ten minutes later, at approximately 9:45 pm, medical staff arrived with a wheeled gurney with a crash board. A nurse whispered to two other corrections officers. They lifted Mr. Rose up by his shoulders and feet, placing him on the portable crash board. No one checked his pulse, or any other vitals. He was not strapped onto the crash board. Mr. Rose was a bluish-purple color.

23. On the way down the stairs, Mr. Rose's arm flopped limply off the board. One of the corrections officers twisted his arm and shoved it under the crash board as they carried him

PAGE 5 – FIRST AMENDED COMPLAINT

down the stairs. The officer twisting Mr. Rose's arm said, "Stop resisting." An inmate on the tier observing this stated, "He's not even moving you idiot! You didn't strap him down!" Mr. Rose at this point was obviously unresponsive and he did not react to his arm being twisted by the officer. A corporal tapped the officer who was twisting Mr. Rose's arm, looked around at all of the inmates watching in their cells, and shook his head. The officer let go of Mr. Rose's arm and dropped it onto his chest with an audible thump.

24. At this point, the officers placed Mr. Rose onto the wheeled gurney. There was a crash cart on the gurney. On the gurney was a medical emergency bag which contained a standard issue defibrillator machine, a CPR apparatus, as well as various other emergency response equipment inside. The medical emergency bag also contained a blood pressure cuff and stethoscope. Neither the nurses nor anyone else used these devices to provide medical care to Mr. Rose. No one opened Mr. Rose's mouth to check his airways, nor did they see if he had swallowed his tongue, or if he was choking on something. The nurses did not check Mr. Rose's pulse with their fingers.

25. At this point, Mr. Rose was now drained a pale-purple color tinged with a blue shade. The officers strapped Mr. Rose onto the wheeled crash cart, and everyone left except for two officers, who packed up his property immediately. An inmate on the unit asked one of them if Mr. Rose had had a seizure or if he was over-dosing; the officer said he did not know and that he is "not trained to resuscitate."

26. This entire process, from removing Mr. Rose from the cell onto the tier to wheeling him away had taken 35 minutes from start to finish, without including the time it took for the unit officer to come out and investigate Mr. Rose's cell before calling for back up and

medical assistance. None of the officers or nurses moved with any urgency and walked slowly about.

27. Despite the obvious need, neither the nursing staff (defendants Shuree Jemmett, Coleman and Campos) nor corrections staff (Herron, Pina, Christian, or Irving) called 911 to have an ambulance come until after Mr. Rose arrived at medical. Mr. Rose was turning blue, in and out of consciousness, and not breathing. The standard of care would be to immediately call 911 and have an ambulance arrive. If an ambulance had been called earlier, Mr. Rose would have survived.

28. Mr. Rose was then transported to the medical bay. The paramedics arrived at TRCI at approximately 10:15 p.m. and when they encountered Mr. Rose conducted an EKG. Mr. Rose was in cardiac arrest. At approximately 10:40 p.m. transported Mr. Rose to Trios Medical Center. On the way, paramedics repeatedly attempted to resuscitate Mr. Rose with CPR and defibrillators. The paramedics arrived at the hospital at approximately 11:20 p.m. At the hospital, medical staff again attempted to resuscitate Mr. Rose but were unable to do so. He died at Trios Medical Center at approximately 12:01 a.m., August 21, 2020.

29. To summarize the timeline:

    9:00 p.m. – Mr. Rose began choking and could not breathe and his cellmate hit the panic button.

    9:05-10 p.m. – Christian arrived at Mr. Rose's cell.

    9:10-15 p.m. – Several corrections officers and Defendant Herron arrived on the unit

    9:45 p.m. – Medical staff arrived with a wheeled gurney with a crash board.

    10:03 p.m. – Medical staff called 911.

    10:15 p.m. – Paramedics arrived.

   10:38 pm – Mr. Rose was taken to Trios Medical Center.

   11:20 p.m. – Mr. Rose arrived at Trios Medical Center.

   12:01 am – Mr. Rose was pronounced dead.

30. Mr. Rose died because defendants failed to provide timely and adequate medical care.

## COUNT I

## 42 USC 1983 – Eighth and Fourteenth Amendment

**(Against Defendants Herron, Irving, Trott, Carlson, Pina, Christian, Coleman, Campos-Hernandez, and Jemmett)**

31. Plaintiff realleges and incorporates each previous paragraph.

32. The Eighth and Fourteenth Amendments impose a duty on jail officials to provide humane conditions of confinement, including adequate medical care and protection from harm and threats to AICs safety and security.

33. Defendants were deliberately indifferent to Mr. Rose's serious medical needs by:

  a. Failing to promptly provide adequate first aid and medical care Mr. Rose despite his symptoms;

  b. Failing to call 911 and request emergency medical services in a timely manner;

  c. Misdiagnosing or failing to diagnose his medical condition;

  d. Failing to properly test and monitor Mr. Rose's condition; and

  e. Failing to promptly transfer Mr. Rose to a hospital for diagnosis and treatment.

34. As a result of defendants' deliberate indifference, Mr. Rose endured and suffered severe physical and emotional distress and a preventable death. Mr. Rose's parents and siblings have been denied his love, society, and companionship. The estate incurred medical expenses and funeral expenses. The estate is entitled to economic and noneconomic damages in an amount to be determined at trial.

35. Defendants have shown reckless and callous disregard and indifference to inmates' rights and safety and are therefore subject to an award of punitive damages to deter such conduct in the future.

36. Plaintiff is entitled to attorney fees and costs pursuant to 42 U.S.C. § 1988.

## COUNT II

### (Wrongful Death)

### (Against Defendant ODOC)

37. Plaintiff re-alleges and incorporates all relevant paragraphs.

38. Defendant ODOC was negligent by:

    a. Failing to promptly provide adequate first aid and medical care Mr. Rose despite his symptoms;

    b. Failing to call 911 and request emergency medical services in a timely manner;

    c. Misdiagnosing or failing to diagnose his medical condition;

    d. Failing to properly test and monitor Mr. Rose's condition; and

    e. Failing to promptly transfer Mr. Rose to a hospital for diagnosis and treatment.

39. Injury to Mr. Rose, including death, was a foreseeable risk of harm.

40.	Defendant ODOC's conduct was unreasonable in light of the risk. Defendant ODOC's conduct unreasonably created a foreseeable risk of harm to a protected interest of the kind of harm that befell Mr. Rose.

41.	Defendant ODOC's medical treatment of Mr. Rose fell below the standard of care thereby causing harm to Plaintiff.

42.	Defendant ODOC owed Mr. Rose a higher standard of care because of the nature of incarceration. As a ward of the State, Defendant ODOC managed all aspects of his health care, and decided when a request for medical treatment should be granted. Had Mr. Rose been a free person, he would have sought the appropriate treatment immediately and had some form of treatment rendered. However, as an incarcerated person, when Mr. Rose sought treatment while in Defendant ODOC's facility, his pleas for treatment were unmet. Defendant ODOC voluntarily took the custody of Mr. Rose under circumstances such as to deprive him of normal opportunities for protection and created a non-delegable duty to ensure that he was able to access adequate medical care while incarcerated. Defendant ODOC did not meet its obligation to provide healthcare, in compliance with appropriate professional standards.

43.	As a direct result of the actions and inactions of defendant ODOC, Mr. Rose endured and suffered severe physical and emotional distress and a preventable death. Mr. Rose's parents and siblings have been denied his love, society, and companionship. The estate incurred medical expenses and funeral expenses. The estate is entitled to economic and noneconomic damages in an amount to be determined at trial.

44.	The Oregon Tort Claims Act notice requirement was satisfied by timely filing a tort claim notice with the Oregon Department of Administrative services on September 9, 2021.

PAGE 10 – FIRST AMENDED COMPLAINT

## PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

a. Compensatory damages;

b. Punitive damages;

c. Attorney fees, costs and disbursements; and

d. Any other relief as the court deems just and proper.

**Plaintiff demands a trial by jury.**

DATED: February 23, 2024

      *s/ John Burgess*
Carl Post, OSB No. 061058
carlpost@lawofficeofdanielsnyder.com
John Burgess, OSB No. 106498
johnburgess@lawofficedanielsnyder.com
Tel: (503) 241-3617 / Fax: (503) 241-2249
Attorneys for Plaintiff

PAGE 11 – FIRST AMENDED COMPLAINT