IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**STEVEN ROSE**, as personal representative of the Estate of Richard Rose,

    Plaintiff,

v.

**STATE OF OREGON**, by and through the Oregon Department of Corrections, an agency of the State of Oregon; **DUSTIN HERRON**; **ALEJANDRO PINA**; **HEATHER CHRISTIAN**; **CHRISTINA IRVING**; **STEPHEN TROTT**; **KIERON CARLSON**; **HAILEY COLEMAN**; **CHRISTINA CAMPOS-HERNANDEZ**; and **SHUREE JEMMETT**,

    Defendants.

Case No. 2:22-cv-00923-IM

**OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Carl Lee Post and John D. Burgess, Law Offices of Daniel Snyder, 1000 SW Broadway, Suite 2400, Portland, OR 97205. Attorneys for Plaintiff.

Nathan Riemersma and Robert E. Sullivan, Oregon Department of Justice, 1162 Court Street NE, Salem, OR 97301. Attorneys for Defendants.

PAGE 1 – OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**IMMERGUT, District Judge.**

This case concerns the circumstances surrounding the August 20, 2020 death of Mr. Richard Rose while he was incarcerated at the Two Rivers Correctional Institute. The parties here are Plaintiff Steven Rose—Mr. Rose's father and the personal representative of his estate—and Defendants the State of Oregon and various officers and staff at Two Rivers. Both Plaintiff and Defendants agree that Mr. Rose, a twenty-four-year-old man, died of cardiac arrest. Joint Statement of Agreed Upon and Disputed Facts ("Joint Statement"), ECF 39 ¶¶ 1, 4, 7. Both agree, too, that paramedics arrived at 10:15 p.m. and transported Mr. Rose to a hospital at 10:45 p.m. *Id.* ¶¶ 4–5. And both agree that the paramedics and Mr. Rose arrived at the hospital at 11:20 p.m. and that Mr. Rose died just past midnight. *Id.* ¶¶ 6–7. Apart from these facts, however, the parties agree on little else about the sequence of events leading up to Mr. Rose's death. Both sides have presented competing testimony and evidence about what happened that night, and neither side has raised any objections to the other's use of evidence at this time.

Primarily for those reasons, this Court DENIES Defendants' Renewed Motion for Summary Judgment ("MSJ"), ECF 40. Defendants challenge Plaintiff's ability to prove that, under the Eighth Amendment, the individual Defendants had the requisite state of mind for a deliberate indifference claim and that Defendant Captain Dustin Herron was personally involved in Mr. Rose's death. *Id.* at 9–10, 11–12. Defendants also challenge Plaintiff's ability to prove that, under Oregon wrongful death negligence law, the State of Oregon did not comply with a community standard of care. *Id.* at 10–11; *see generally* Defendants' Reply ("Reply"), ECF 49. But because there are key disputed issues of fact with respect to both the Eighth Amendment and wrongful death negligence claims, Defendants' contentions are unavailing.

## LEGAL STANDARDS

A party is entitled to summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute of material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). The moving party bears the initial burden of identifying portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the opposing party must then set out specific facts showing a genuine issue for trial to defeat the motion. *Anderson*, 477 U.S. at 250.

## DISCUSSION

Plaintiff has brought an Eighth Amendment Deliberate Indifference Claim under 42 U.S.C. § 1983 against the individual Defendants. *See* First Amended Complaint, ECF 34 ¶¶ 31–36. He has also brought an Oregon state law wrongful death claim against the State of Oregon. *See id.* ¶¶ 37–44. Defendants seek summary judgment on both claims. *See* MSJ, ECF 40 at 13–14. This Court now denies Defendants' Motion for Summary Judgment.

Due to the wide disparity between the parties' accounts of what happened leading up to Mr. Rose's death, this Opinion forgoes a background section and instead begins by identifying

the differences in the parties' accounts. After doing so, this Opinion explains why those disputes of fact defeat Defendants' Motion with respect to Plaintiff's Eighth Amendment claim. Then, this Opinion explains why Plaintiff has provided sufficient evidence to raise a genuine dispute of material fact with respect to negligence under Oregon law.

**A. The Parties' Opposing Timelines of What Happened on August 20, 2020**

As stated above, both sets of parties agree that Mr. Rose, a twenty-four-year-old man, died of cardiac arrest. Joint Statement, ECF 39 ¶¶ 1, 4, 7. Both agree, too, that paramedics arrived at 10:15 p.m. and transported Mr. Rose to a hospital at 10:45 p.m. *Id.* ¶¶ 4–5. And both agree that the paramedics and Mr. Rose arrived at the hospital at 11:20 p.m. and that Mr. Rose died just past midnight. *Id.* ¶¶ 6–7.

But the parties cannot agree on, among other things, when Mr. Rose fell ill, when and how staff at Two Rivers responded, and when an ambulance was called. In support of their respective accounts, the parties have presented competing declarations and pieces of evidence, and neither side has raised any objections to the other's use of evidence at this time.

The varying accounts are laid out in the following table:

|  | **Plaintiff's Version** | **Defendants' Version** |
|---|---|---|
| When did Mr. Rose fall ill? | Mr. Rose fell ill at about 9:00 p.m., when he began vomiting, making a strange noise, and turning purple. Declaration of Jason Ellis ("Ellis Decl."), ECF 47 ¶ 4; Sooner Crane Interview ("Crane Interview"), ECF 45, Ex. A at 3:29–4:15.[1] | Mr. Rose's cellmate pressed his emergency button at 9:45 p.m. Declaration of Dustin Herron ("Herron Decl."), ECF 40-2 ¶ 4. Defendant Officer Pina notified |

---

[1] Plaintiff does not have affirmative evidence that Plaintiff fell ill at 9:00 p.m. However, Plaintiff has seemingly identified the 9:00 p.m. time by working backward from when (in Plaintiff's account) Mr. Rose was taken down to the Correctional Institute's Health Services Ward (9:45 p.m.). *See infra* at 6.

Citations to the Ellis Declaration rely on the paragraph numbering provided by Plaintiff in his Response Brief. *See* Plaintiff's Response to Defendants' Motion, ECF 43 at 2–5.

PAGE 4 – OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| When were officers called to his cell? | His cellmate immediately began pressing the emergency button to catch the attention of the guard on duty. Crane Interview, ECF 45, Ex. A at 3:29–4:20. His cellmate then began yelling to the other inmates that Mr. Rose was not breathing, using the phrase "man down." Ellis Decl., ECF 47 ¶ 1; Blackmon Interview, ECF 45, Ex. H at 1:50–2:00. Numerous inmates then began banging their cell doors and yelling for staff to respond to Mr. Rose's cell. Ellis Decl., ECF 47 ¶ 1. After about five minutes, one inmate told Defendant Officer Pina to "[d]o something" to which Office Pina responded "You shut up. He's not dying. You think I don't know how to do my job?" Id. Defendant Officer Christian then went up to the unit and requested "back up" on her radio, stating that Mr. Rose was "not moving." Id. In response to an inaudible question, she said "Eh, I don't know if we need to send medical yet. Maybe send the L.T. [lieutenant] first." Id. ¶ 2. | Defendant Officer Christian to report to Mr. Rose's cell. Id. Officer Christian then immediately responded to the cell. Id. She reported that Mr. Rose was breathing but not responsive. Id. |
| When was medical help called?<br><br>How did officers react to the scene? | After another five minutes passed, several more officers and Defendant Lieutenant Herron arrived. Ellis Decl., ECF 47 ¶ 2. Inmates yelled at Lieutenant Herron to "help" Mr. Rose, to which he responded "He's fine. Stop yelling out of your doors or you'll go to the hole." Id. None of the officers on the scene provided first-aid to Mr. Rose. Id. Two nurses, Defendants Coleman and Campos-Hernandez, then arrived, but without any medical equipment. Id. The nurses did not place their fingers on Mr. Rose's neck or wrist. Id. Inmates shouted at them to check his vitals and his breathing. Id. Mr. Rose was not moving and was completely limp. Id. Defendants Sergeant Trott and Corporal Carlson took Mr. Rose out onto the tier outside his cell. Id. Other officers handcuffed Mr. Rose's cellmate. Id. | Officer Christian called a "man-down" between 9:45 and 9:50 p.m. Herron Decl., ECF 40-2 ¶ 4. Officer Christian reported that she needed "medical on the unit." Id. "An A-Team and medical response" team were called to the incident. Id. ¶ 5. Defendant Sergeant Irving assumed command. Id. She reported that Mr. Rose was vomiting and unresponsive; his face and feet were purple, but he was still breathing and had a pulse. Id. He could sit up, but could not respond to questions. Id. |
| When did medical staff arrive? | During the time the officers were on the scene, Mr. Rose's "body was becoming further discolored." Ellis Decl., ECF 47 ¶ 2. Five to ten minutes after the officers had handcuffed Mr. Rose's cellmate, medical staff arrived at about 9:45 p.m. with a wheeled gurney and a crash board. Id.; Ex. C, ECF 43-3 at 2. | "Medical arrived shortly after" Sergeant Irving's team. Herron Decl., ECF 40-2 ¶ 6. |

PAGE 5 – OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| What happened on the way to and at the Health Services ward? | Mr. Rose was placed, but not strapped, onto a crash board. Ellis Decl., ECF 47 ¶ 2. As Mr. Rose was being carried away, his arm flopped limply off the board, and one of the officers twisted the arm and shoved it under the crash board, telling Mr. Rose, "Stop resisting." *Id.*; Blackmon Interview, ECF 45, Ex. H at 2:10–20. Then the officers placed Mr. Rose onto a wheeled gurney. Thirty-five minutes elapsed between Two Rivers staff placing Mr. Rose on the tier outside his cell and wheeling him away on the gurney. Ellis Decl., ECF 47 ¶ 4. At no point before Mr. Rose was taken to the Medical Services ward was medical aid administered to Mr. Rose. Blackmon Interview, ECF 45, Ex. H at 4:00–4:20, 10:20–35; *see generally* Ellis Decl., ECF 47. | Mr. Rose was strapped onto a backboard and taken down to the Health Services ward. Herron Decl., ECF 40-2 ¶ 7. There, nurses were unable to get a blood pressure reading. *Id.* They then applied an oxygen mask and established an IV to provide him with fluids. *Id.* |
| When was an ambulance called? | No one called 911 for an ambulance until about 10:03 p.m., after Mr. Rose had arrived at the Medical Services Ward. Ex. D, ECF 43-4. | A medical team radioed for an ambulance to be called shortly after arriving at Mr. Rose's cell around 9:50 p.m. Herron Decl., ECF 40-2 ¶ 6; Ambulance Request Form, ECF 40-2 at 12. |
| **Summary of Timelines** | 9:00 p.m. — Mr. Rose falls ill, and the emergency button is pressed.<br><br>9:10 p.m. — Officers, including Defendant Herron, arrive at the scene.<br><br>9:45 p.m. — Nurses arrive with a gurney to take Mr. Rose to the Medical Services ward.<br><br>10:03 p.m. — A 911 call is placed.<br><br>10:15 p.m. — An ambulance arrives. | 9:45 p.m. — The emergency button is pressed.<br><br>9:45–50 p.m. — Officer Christian arrives and calls a "man down," and other officers arrive.<br><br>9:50–55 p.m. — Medical team arrives and calls for an ambulance. They take Mr. Rose down to Health Services.<br><br>10:15 p.m. — An ambulance arrives. |

In addition to the discrepancies between the parties' timelines, Plaintiff also contends that there are inconsistencies between the various accounts offered by the Two Rivers' staff. *See* Plaintiff's Response to Defendants' Motion ("Resp."), ECF 43 at 9. While Officers Baker, Abdal, Cannon, Hudson, Christian, and Pina claim that the "man down" was called at about 9:45

PAGE 6 – OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

p.m., *see* Ex. B, ECF 43-2 at 2–4, 6–12, the medical records state that medical staff "[a]rrived on unit at 2145 [9:45 p.m.] w[ith] gurney," Ex. C, ECF 43-3 at 2. These accounts are irreconcilable and likewise create a dispute of material fact as to when precisely Mr. Rose received medical attention and the sequence of events preceding the arrival of the ambulance at 10:15 p.m.

In short, there are key disputed issues of fact that a jury must resolve at trial. To do so, the jury will need to make credibility findings, especially concerning Jason Ellis and Mackenzie Blackmon for Plaintiff and various staff at Two Rivers for Defendants. *See Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) ("[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence, as those are functions reserved for the jury." (citation and internal quotation marks omitted)).

With the issues of fact laid out, the next section explains how these issues preclude summary judgment with respect to Plaintiff's Deliberate Indifference claim against the individual Defendants.

**B. There Are Disputed Issues of Material Fact With Respect to Plaintiff's Deliberate Indifference Claim**

Under the Eighth Amendment, as applied against the States by the Fourteenth Amendment, "[i]ndividuals in state custody have a constitutional right to adequate medical treatment." *Sandoval v. County of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021) (citing *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)). Inmates who are harmed in state custody and seek to vindicate their Eighth Amendment right "must show that the prison officials acted with 'deliberate indifference.'" *Castro v. County of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016) (en banc).[2] "A prison official cannot be found liable under the Cruel and Unusual Punishment

---

[2] A plaintiff must also show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton

PAGE 7 – OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Clause for denying an inmate humane conditions of confinement 'unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation and internal quotation marks omitted). "The indifference to a prisoner's medical needs must be substantial. Mere indifference, negligence, or medical malpractice will not support this claim." *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1081–82 (9th Cir. 2013) (brackets, citations, and internal quotation marks omitted).

Defendants challenge Plaintiff's ability to prove that the individual Defendants had the requisite state of mind and that Defendant Herron was personally involved in Mr. Rose's death. Because there are genuine issues of fact as to both issues, Defendants' contentions fail.

1. **Subjective Awareness**

Plaintiff has presented sufficient evidence to establish a genuine issue of fact on whether the individual Defendants had subjective awareness of the risk of harm to Mr. Rose. *See id.* at 1098. The evidence, assuming it is reliable, shows the following. *See Albino v. Baca*, 747 F.3d 1162, 1173 (9th Cir. 2014) (en banc) (District courts "must view all of the facts in the light most favorable to the non-moving party and rule, as a matter of law, based on those facts." (citation

---

infliction of pain. *See Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (citation omitted). Defendants do not contest Plaintiff's ability to satisfy this prong and acknowledge that "there is no dispute that [Mr. Rose's] medical need was serious." MSJ, ECF 40 at 10; Reply, ECF 49 at 6.

omitted)). After Two Rivers staff responded to Mr. Rose's cell, Mr. Rose continued turning blue and was unresponsive for at least thirty-five minutes before he was taken out of his prison cell unit to the Medical Services ward. No staff attempted to resuscitate or treat Mr. Rose before he was transferred out of his cell unit. One staff member even twisted Mr. Rose's limp arm as he was being taken out of the cell unit. An ambulance was not called until 10:03 p.m.—nearly an hour after he first fell ill, by Plaintiff's account.

In total, when viewed in the light most favorable to the non-movant Plaintiff, the evidence that the individual Defendants saw Mr. Rose turning blue and limp, but still failed to act, gives rise to the inference that Defendants knew that Mr. Rose was having a medical emergency yet disregarded Mr. Rose's welfare. *See Farmer*, 511 U.S. at 842 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."); *see also Lemire*, 726 F.3d at 1083 (explaining that deliberate indifference was demonstrated when, during a five-minute period, officers "took no life saving action while waiting for [medical staff] to arrive" in response to a suicide attempt); *Sandoval*, 985 F.3d at 678–79 ("[I]t has long been established that failing to provide life-saving measures to an inmate in obvious need can provide the basis for liability under § 1983 for deliberate indifference." (ellipsis, citation, and internal quotation marks omitted)); *Williams v. Ross*, No. C 04-2409 SI, 2009 WL 890399, at *2 (N.D. Cal. Apr. 1, 2009) (citing out-of-circuit cases that "clearly establish a prisoner's recognized right to prompt medical care when displaying symptoms of cardiac arrest"). The foregoing raises a genuine issue of material fact with respect to the individual Defendants' deliberate indifference.

### 2. Captain Herron's Personal Involvement

Defendants also contend that Plaintiff has failed to establish the "personal involvement of [Defendant] Herron" in the events leading up to Mr. Rose's death. MSJ, ECF 40 at 12.[3] This assertion, however, is incorrect. "A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (citation and internal quotation marks omitted). Here, Plaintiff has set forth facts showing that Captain Herron was among the officers who responded to Mr. Rose's situation and was therefore among those who failed to react to Mr. Rose's medical emergency. There is thus a genuine dispute of material fact as to Defendant Herron's personal involvement in the alleged Eighth Amendment violation here.

\* \* \*

With respect to Plaintiff's deliberate indifference claim, because Defendants have neither "produce[d] evidence negating an essential element of the nonmoving [Plaintiff's] case" nor "show[ed] that [Plaintiff] does not have enough evidence of an essential element of [his] claim," this Court denies summary judgment. *Nissan Fire & Maine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000).

### C. There Is a Genuine Issue of Material Fact With Respect to Negligence Under O.R.S. 30.020

Oregon's wrongful death statute provides that "[w]hen the death of a person is caused by the wrongful act or omission of another, the personal representative of the decedent, for the

---

[3] While it appears that Defendant Herron was a Lieutenant at Two Rivers at the time of Mr. Rose's death, both Plaintiff and Defendants in their briefs refer to him in the present tense as Captain Herron.

benefit of the decedent's . . . surviving parents and other individuals, . . . may maintain an action against the wrongdoer, if the decedent might have maintained an action, had the decedent lived, against the wrongdoer for an injury done by the same act or omission." O.R.S. 30.020(1).

Under this provision, a plaintiff "must demonstrate that [the] defendant's negligent acts or omission was sufficient to bring about [the] decedent's death." *Joshi v. Providence Health Sys. of Or. Corp.*, 342 Or. 152, 164 (2006). In a case involving alleged medical negligence, the plaintiff must establish: (a) the degree of care, skill, and diligence used by ordinary careful medical provider in the same or similar community in the same or similar circumstances as the decedent's medical providers; (b) that those medical providers failed to use reasonable care and diligence in their care and treatment of the decedent; and (c) that, as a result of the failure to exercise reasonable care, the decedent died. *Adams v. United States*, Case No. 3:19-cv-00804-AC, 2022 WL 1538649, at *14 (D. Or. May 16, 2022) (citing *Joshi*, 342 Or. at 164).

In their Motion for Summary Judgment, Defendants contend that Plaintiff lacks the expert testimony to satisfy this test for negligence. *See* MSJ, ECF 40 at 10. In particular, Defendants assert, Plaintiff lacks "a qualified expert" who can "address . . . whether Mr. Rose had a real chance of survival under any set of facts" and "opine that the alleged timeline amounted to an unreasonable delay that would breach the community standard of care." Reply, ECF 49 at 2; *see* MSJ, ECF 40 at 11. Plaintiff does not challenge Defendants' contention that this case calls for expert testimony to establish negligence. *See* Resp., ECF 43 at 20–21.[4]

---

[4] To be certain, under Oregon law, "[n]ot every medical case requires expert testimony to establish either the standard of care or causation." *Chouinard v. Health Ventures*, 179 Or. App. 507, 512 (2002). The U.S. District Court of the District of Arizona has held that, under Arizona wrongful death law, a plaintiff "may show negligence on the part of [a] nurse even without expert testimony as to a nurse's standard of care" when the decedent "presented with the classic symptoms of a heart attack that are widely known even among those with no formal medical

PAGE 11 – OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff does, however, present two sets of evidence that raise a genuine issue of material fact as to negligence under Oregon law: the expert testimony of Dr. Kousik Krishnan and the deposition testimony of the Nurse Defendants. They are addressed below in turn.

**1. Dr. Kousik Krishnan's Expert Testimony**

*First*, Plaintiff points to the expert report and declaration of his medical expert Dr. Kousik Krishnan, whom Defendants "stipulate . . . is a qualified expert in Cardiology" for the purposes of summary judgment. Reply, ECF 49 at 2–3. In his expert report, Dr. Krishnan explains "that in cases of an acute myocardial infarction, especially the ST Elevation variety (STEMI), the quicker a patient is attended to from the onset of symptoms, the likelihood of a favorable outcome increases." Krishnan Report, ECF 40-3 at 3. "If there was a delay in attending to the patient from the onset of symptoms," Dr. Krishnan continues, "this would have directly and negatively impacted the patient's outcome." *Id.* Specifically, Dr. Krishnan opines, "[a] delay of 20–40 minutes in treating a patient for cardiac arrest can make the different between life and death." Declaration of Dr. Kousik Krishnan ("Krishnan Decl."), ECF 44 ¶ 6. Dr. Krishnan also states that "[t]he standard of care would require that 911 be called immediately upon seeing a patient turning blue above the shoulders and having difficulty breathing and being in and out of consciousness." *Id.* ¶ 4. Based on these opinions, Dr. Krishnan concludes that because 911 was not called for at least thirty-five minutes after Two Rivers staff arrived at Mr. Rose's cell, Defendants "failed to meet the standard of care" and directly contributed to Mr. Rose's death. *Id.* ¶¶ 4, 6.

---

training." *Reidhead v. Arizona*, No. CV–12–00089–PHX–JAT, 2014 WL 2861046, at *6 (D. Ariz. June 24, 2014).

Defendants attack Dr. Krishnan's opinions on several grounds, but none persuade. To start, Defendants contend that "Dr. Krishnan does not appear to understand the difference between 'Man Down' and summoning 911/EMS" and that "[t]he prison does not have a duty to call 911 any time a 'man down' is yelled by a prisoner or staff." Reply, ECF 49 at 3.[5] Even assuming 911 was not called until 10:03 p.m., they say, Dr. Krishnan cannot opine that a fifteen-minute period from the "Man Down" to calling 911 violated the standard of care. *Id.*

Defendants' argument is flawed because it requires this Court to assume the correctness of their timeline of events (i.e., that the "man down" was called at 9:45 p.m., not 9:00 p.m.), which this Court cannot do at this procedural posture. Rather, as Plaintiff is the non-movant, this Court must look to his evidence and construe it in the light most favorable to him. *See Anderson*, 477 U.S. at 248; *Albino*, 747 F.3d at 1173. Plaintiff's timeline shows that even after officers and nurses responded to the "man down" there was at least a thirty-five-minute delay in calling 911. *See* Reply, ECF 49 at 4 (accepting that this is Plaintiff's timeline). Given Dr. Krishnan's view that a delay of 20–40 minutes "can make the difference between life and death" and that 911 would need to be called "immediately upon seeing a patient turning blue," Krishnan Decl., ECF 44 ¶¶ 6, 4, his opinion is sufficient to create a genuine dispute of material fact as to whether Defendants' actions during the gap between the "man down" and the 911 call violated the standard of care and caused Mr. Rose's death.

Defendants also argue that Dr. Krishnan's opinion is insufficient because, even if Plaintiff's timeline were correct, "there was a one-hour-and-seventeen-minute (1:17:00) time lapse from the 911 call until Mr. Rose arrived at the hospital." Reply, ECF 49 at 4. The thrust of

---

[5] Defendants alternate between stating "Man Down" and "man down."

Defendants' contention appears to be that because Dr. Krishnan has not deemed this time lapse to be "unreasonable," Mr. Rose's death was not caused by a violation of the standard of care. *Id.*

Defendant's focus on this time period is misdirected. Dr. Krishnan does not say that Mr. Rose needed to be at a hospital within twenty to forty minutes of his heart attack; he says more generally that "the lifesaving measures that would [have been] necessary to save [Mr. Rose's] life were pushed back in time." Krishnan Decl., ECF 44 ¶ 6; *see* Krishnan Report, ECF 40-3 at 3 (referring to "attending to the patient from the onset of symptoms"). Therefore, although the time lapse between the 911 call and Mr. Rose's arrival at the hospital may bear on causation, it does not completely negate Dr. Krishnan's opinion at this time.

In sum, contrary to Defendants' arguments, Dr. Krishnan's expert opinion at this stage sufficiently addresses whether Defendants' alleged delay in giving Mr. Rose life-saving medical treatment was a violation of the standard of care and caused Mr. Rose's death. Dr. Krishnan's opinion therefore creates a genuine dispute of material fact with respect to negligence.

### 2. The Deposition Testimony of the Nurse Defendants

*Second*, Plaintiff points to the deposition testimony of Defendants Jemmett, Coleman, and Campos-Hernandez, the Two Rivers nurses who responded to Mr. Rose's medical emergency. (Defendants do not respond at all to Plaintiff's arguments on this score.) Defendant Jemmett stated that Mr. Rose was in an "emergency situation." Ex. E, ECF 43-5 at 3 (13:8–10). Defendant Campos-Hernandez stated that, while the nurses and officers were "still on the unit," the nurses told the officers that Mr. Rose needed to go to the hospital Ex. F, ECF 43-6 at 3 (12:2–13:4). And Defendant Coleman stated that "as soon as [the nurses] saw . . . his appearance, [they] asked security right then to call for an ambulance." Ex. G, ECF 43-7 at 2 (16:5–10). It

follows from the nurses' statements that, when one sees an individual in Mr. Rose's condition, the ordinary standard of care would be to immediately call 911 and administer first aid.

\* \* \*

Accordingly, with respect to wrongful death negligence under Oregon law, Plaintiff has provided sufficient evidence, both from his expert and the medical staff at Two Rivers, to raise a genuine issue of material fact. *Nissan Fire*, 210 F.3d at 1106.

## CONCLUSION

For the reasons above, this Court DENIES Defendants' Motion for Summary Judgment, ECF 40.

**IT IS SO ORDERED.**

DATED this 10th day of May, 2024.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge